RUSSELL S. STODDARD *vs.* JOHN B. PENNIMAN.

An alteration of a note, made with the assent of a party to it with a view to its immediate discount, but upon the agreement that the consent of another party to it, then absent, shall be subsequently obtained, does not, such consent not having been obtained, render the note so negotiated invalid against the assenting party.

CONTRACT alleging that the defendant made a promissory note payable to the plaintiff by the name of Russell M. Stoddard, or order, and owed the plaintiff the amount thereof and interest. Writ dated November 17, 1869. The copy of the note, annexed to the declaration, was as follows:

"$400. Lawrence, April 1, 1869.

"Two months after date I promise to pay to the order of myself Russell M. Stoddard, four hundred dollars. Value received. James W. Hanson."

Indorsed upon the note were the signatures of John B. Penniman, (the defendant,) Charles· A. Brown, and Russell S. Stoddard, (the plaintiff.) The answer alleged, among other things, that the note had been materially altered since the defendant signed it, so as to be no longer binding upon him.

After the decision, reported 108 Mass. 366, the case was again tried in the Superior Court, before *Brigham*, C. J.

The defendant relied upon the fact that the note, subsequent to his signature, had been materially altered, (the alteration consisted in erasing the word "myself" and substituting the name of "Russell M. Stoddard," as in the body of the note,) without his knowledge or consent. The plaintiff contended, and introduced evidence to show, that the defendant consented to the alteration at the time it was made. And the question of the defendant's consent was the question for the jury.

The plaintiff, to show the defendant's consent, introduced the deposition of Hanson, who testified that the note was signed by Penniman and by Brown, at his request, to enable him to get $400 from the Bay State National Bank; that he did not obtain it there, because the bank would not discount the note; and that he then got the money of, and gave the note to, the plaintiff. The eleventh interrogatory was, "Before you obtained the money of Stoddard, did you notify Penniman? Did he consent? If you had any conversation with Penniman in reference to obtaining the money of Stoddard, state the whole conversation particularly." To this the answer was: "I did notify Penniman and he consented under the following circumstances: When I learned that I could not get the money from the bank and that C. A. Brown had left the city for several days, I went to Penniman and laid the whole circumstances of the case before him, and told him that I could get the money from R. S. Stoddard on that note with the consent of the indorsers. He consented that I should get the money of Stoddard on that note, provided that I would notify Brown on his return, and if he made objection, I would relieve both and furnish other security, and in this way I obtained the money, and as soon as Mr. Brown returned, I informed him of what I had done, and he made no objection, and thus

the case stood." The defendant's second cross-interrogatory was as follows : " If you shall answer that you obtained the money on said note from one Stoddard, and informed said Penniman from whom you obtained said money, state whether or not this information was given by you to said Penniman some days after you received the money on said note." To this the answer was, "No ; it was not given after I received the money, but before I received it, and Penniman gave me his full and unequivocal consent, that I should get the money from Stoddard, in just the manner I did, after I had failed in getting it from the bank, provided I should get the consent of Brown, after he returned, which I did." The defendant's third cross-interrogatory was as follows : " If you shall answer that you received the money on said note from one Stoddard, please state whether or not, at the time you obtained said money, you altered said note at the request and in the presence of said Stoddard, by erasing the word ' myself ' in the body of said note, and by interlining in the place thereof, the name ' Russell M. Stoddard.' " To this the answer was : " By previous agreement with Penniman, I did, at the time I obtained the money, erase the word ' myself,' and in the place thereof insert the name ' Russell M. Stoddard,' I think in the presence of Russell M. Stoddard, and I went with the money in my hand to Penniman, and told him what I had done, and he fully assented."

There was in the deposition other evidence bearing upon the question of consent. It was admitted that Brown was absent from Lawrence at the time spoken of by the defendant, and that he was never consulted, and never consented to the alteration. The defendant introduced testimony tending to prove that he was never consulted by Hanson on the subject, and never heard of the alteration until long afterwards, at about the time of the maturity of the note.

The plaintiff requested the judge to instruct the jury as follows: " If the jury find that Penniman consented to the alteration at the time it was made, upon a condition to be performed by Hanson afterward, as if he would obtain the consent of Brown after he returned from New York, then, if Hanson made the alteration at

the time he obtained the money and before Brown returned, and afterwards failed or neglected to get the consent of Brown, this would be sufficient consent, upon the part of the defendant, to the alteration."

But the judge declined to instruct the jury as requested, but did instruct them, that if Penniman consented to the alteration of the note, before the time the money was obtained, as stated by Hanson in his answer to the second cross-interrogatory, and Hanson did not obtain the consent of Brown, then the plaintiff could not recover, unless it also appeared that Penniman subsequently consented to and ratified the alteration. The verdict was for the defendant, and the plaintiff alleged exceptions.

*W. S. Knox,* for the plaintiff.

*S. B. Ives, Jr., & R. C. Lincoln,* for the defendant.

MORTON, J. Upon the former hearing of this case it was decided that the alteration made in the note in suit was a material alteration, which avoided the note as to the defendant unless made with his assent. *Stoddard* v. *Penniman,* 108 Mass. 366. At this trial the plaintiff introduced evidence tending to show that the defendant assented to the alteration at the time it was made, a part of which was the deposition of Hanson, who made the alteration. He stated in answer to the second cross-interrogatory: "Penniman gave me his full and unequivocal consent that I should get the money from Stoddard in just the manner I did, after I had failed in getting it from the bank, provided I should get the consent of Brown, after he returned, which I did." In his answer to the eleventh direct interrogatory, he said: "I did notify Penniman and he consented under the following circumstances: When I learned that I could not get the money from the bank and that C. A. Brown had left the city for several days, I went to Penniman and laid the whole circumstances of the case before him, and told him that I could get the money from R. S. Stoddard on that note with the consent of the indorsers; he consented that I should get the money of Stoddard on that note, provided that I would notify Brown on his return, and if he made objection, I would relieve both and furnish other security, and in this way I obtained the money,

and as soon as Mr. Brown returned, I informed him of what I had done, and he made no objection, and thus the case stood." It was the province of the jury to determine from this deposition and the other evidence in the case what the arrangement between Penniman and Hanson was.

If Penniman assented to the alteration upon the understanding that the note was to be used at once, and Hanson was afterwards to procure the assent of Brown or furnish other security, the note would bind him in the hands of Stoddard, and the failure of Hanson to procure Brown's assent would be no defence. In this view of the case, there was no condition precedent to Hanson's right to pass the note to Stoddard as a contract binding upon the defendant, and his subsequent failure to perform an executory agreement to procure the assent of Brown would not affect the plaintiff's right to recover. On the other hand, if his procuring Brown's assent was made by Penniman a condition precedent to his right to use the note, then, as the condition was not performed, Penniman never consented to the alteration or to the new note as a contract binding upon him, and the plaintiff cannot recover.

If this latter was the only view justified by the evidence, the instructions given at the trial, as reported in the bill of exceptions, would be correct and sufficient.

They were, " that if Penniman consented to the alteration of the note before the time the money was obtained, as stated by Hanson in his answer to the second cross-interrogatory, and Hanson did not obtain the consent of Brown, then the plaintiff could not recover, unless it also appeared that Penniman subsequently consented to and ratified the alteration." These instructions assume that the only construction to be given to the evidence is, that obtaining the consent of Brown was a condition precedent to the right to use the note ; but it was the province of the jury to construe this answer in connection with the other parts of the deposition and the other evidence in the case ; and it was competent for them, if they believed Hanson, to find that Penniman assented to the immediate use of the note as altered, and was satisfied to take an executory agreement by Hanson to procure Brown's consent or furnish other security.

We think the plaintiff was entitled to an instruction, in sub-stance like that he requested, to meet this aspect of the case. The instructions should have stated to the jury the rules of law applicable to either aspect of the case which they might find upon the evidence and therefore those given at the trial were insufficient. *Exceptions sustained.*